1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

# UNITED STATES  DISTRICT COURT

## Northern District of California

### Oakland Division

N.B. INDUSTRIES, a California corporation,
individually and on behalf of others similarly
situated,

                Plaintiffs,

    v.

WELLS FARGO & Company, a Delaware
corporation; WELLS FARGO BANK, N.A., a
national banking association; UNITED
STATES PAN ASIAN AMERICAN
CHAMBER OF COMMERCE, a District of
Columbia nonprofit corporation; and UNITED
STATES PAN ASIAN AMERICAN
CHAMBER OF COMMERCE EDUCATION
FOUNDATION, a District of Columbia
nonprofit organization,

                Defendants.

_____/

No. C 10-03203 LB

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS PURSUANT
TO FEDERAL RULE OF CIVIL
PROCEDURE 12(B)(6)** [ECF No. 12]

## I. INTRODUCTION

    N.B. Industries filed this class action against Wells Fargo & Company and Wells Fargo Bank,

N.A. (collectively, "Wells Fargo") and the non-profit organizations United States Pan Asian

American Chamber of Commerce and United States Pan Asian American Chamber of Commerce

Education Foundation (collectively "USPAACC"), alleging that the defendants violated the Junk

Fax Prevention Act by sending unsolicited advertisements by facsimile to businesses nationwide,

including four faxes sent to N.B. Industries and attached as exhibits to the complaint.  Complaint,

ECF No. 1 at 6-7, ¶¶ 14, 17, and 20-39 (the four faxes).[1]  Because this court concludes as a matter of law that the faxes – which contained information about and applications for an Asian Business Leadership award – are not "advertisements" under 47 U.S.C. § 227(a)(5) of the Act, this court **GRANTS** Defendants' motion to dismiss and **DISMISSES WITH PREJUDICE** the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## II.  FACTS

The facts here are from N.B. Industries' complaint.

**A.  The Faxes**

In January and February 2010, USPAACC, a non-profit corporation, sent no fewer than four unsolicited faxes to N.B. Industries (A) promoting an annual Asian Business Leadership Award sponsored by USPAACC and Wells Fargo and (B) containing an application for the award. Complaint, ECF No. 1 at 4, ¶¶ 8-9, 15 , ¶ 33.  The four faxes are attached to the complaint.  *Id.* at 20-39.  Plaintiff believes Defendants "blasted thousands" of similar unsolicited faxes to a class that "exceeds 6,000 persons or entities."  *Id.* at 2, ¶ 2 and 10, ¶ 23.

The four faxes are four pages each and identical.  *Id.* at 20-39.  The last fax sent on February 19, 2010 also has a fifth page that is a USPAACC fax cover sheet with the faxer's name and contact information and that extends the application deadline from February 19, 2010 to the last week of February.  *Id.* at 35.  A detailed description of the faxes is as follows.

Page one is a fill-in-the-blank application for the "USPAACC-EF/Wells Fargo Asian Business Leadership Award" to be presented at the "USPAACC-EF 25th Anniversary CelebrAsian Business Opportunity Conference."  It contains two logos, each the size of a penny, for "Wells Fargo" (top right corner) and "USPAACC-EF" (midway down left side).  In the bottom right corner is a modest logo with the words "Together we'll go far" and a stagecoach and horses.  The application fills up most of the page with blank lines for the award nominees' business and personal information.  A side bar lists in small font the qualifications, which in summary form are being at least 18, a legal resident of the United States, and an active principal for at least three years in an at-least-51%-

---

[1]  Citations are to the docket entry in the Electronic Case File ("ECF") with pin cites to the electronic page number at the top of the document (not the page number at the bottom).

Asian-owned company. The side bar then lists the award's background and purpose: USPAACC and Wells Fargo (A) support Asian business owners, (B) established the award to honor leading Asian businesses for great leadership, vision, and products, as demonstrated by business performance, growth, and contribution to the community, and (C) will award a $5,000 grant to and recognize three outstanding Asian-owned businesses at the CelebrAsian Conference. *Id.* at 36.

Page two contains six questions that applicants must answer about their businesses (covering products, philosophy, accomplishments, and benefits to consumers and the community), asks for a brief bio, and asks for two letters of reference from any of the following: banker, local USPAACC chapter, local chamber of commerce, city/state representative, supply vendors, or customers. It also provides details about (A) how to apply (such as numbers of copies), (B) the award process (such as review of applications by an award committee from USPAACC and Wells Fargo), (C) the award rules (such as applications are the property of Wells Fargo and winners must provide photographs and publicity releases), (D) the award's presentation at the CelebrAsian Business Opportunity Conference, which applicants are "strongly encouraged" to attend at their own expense, and (E) where questions should be directed (to USPAACC at an 800 number or to Wells Fargo's Asian Business Services at abs@wellsfargo.com). Page two also contains an agreement to be signed by the applicant agreeing to award rules, including verification of information in the application, background checks, and use of the awardee's "pictures, likeness, name and all other information set forth in the application" in articles and publications and for advertising or promotional purposes. *Id.* at 37.

Page three has a three-line caption encouraging Asian business owners to apply for the award, three pictures of past award winners, a Wells Fargo logo around the size of a quarter in the top right corner, and the logo with the words "Together we'll go far" and a stagecoach and horses in the bottom right corner. *Id.* at 38.

The fourth and final page has USPAACC's logo and business address in the top right corner, and the right column is otherwise blank. A left column reiterates the following: (A) three leading Asian businesses will receive a $5,000 award and be recognized at the conference for their vision, success, and community contributions; (B) the basic applicant qualifications from page one; and (C) the

1    February 19, 2010 application deadline.  The column's final two lines are "visit uspaacc.com or

2    wellsfargo.com/biz/asian."  *Id.* at 39.

3    **B.   Other Facts From N.B. Industries' Complaint**

4        In 2002, Wells Fargo created an "Asian Business Services" program to attract Asian-owned

5    businesses as customers.  Two years later, Wells Fargo and USPAACC created the leadership award

6    jointly.  *Id.* at 6-7, ¶ 14.  The award is presented at a USPAACC conference called "CelebrAsian

7    Business Opportunity Conference," which generates revenues for USPAACC from attendeees,

8    sponsors, and exhibitors.  USPAACC certifies Asian businesses for a fee.  The purpose of the

9    conference and certification program are to provide opportunities to (1) Asian-American businesses

10   to increase business opportunities with corporate and government purchasers and (2) corporate and

11   government purchasers to diversify their supplier and vendor base.  *Id.* at 7, ¶ 15.   Wells Fargo

12   participates in the conferences, was co-chair of the May 2007 conference, and made an investment

13   of $208,000 in USPAACC in 2009 for a national research study.  *Id.* ¶ 16.

14   **C.  The Court Does Not Consider Additional Faxes Attached to Complaints In Other Cases**

15       In a declaration in support of their reply brief, Wells Fargo and USPAACC submitted faxes that

16   were part of complaints in other cases.  *See generally* ECF No. 25.  Those cases resulted in the

17   opinions cited in the parties' briefs.  *See id.*  All faxes are part of the public record and were

18   retrieved from PACER or the court file.  *See id.*  Wells Fargo and USPAACC provided the faxes to

19   show the kinds of faxes that courts found to be advertisements.  *See, e.g.,* Reply Brief, ECF No. 24,

20   at 3-4.

21       At the hearing, Wells Fargo suggested that the court could take judicial notice of the faxes

22   because they are part of pleadings that are a matter of public record and not subject to reasonable

23   dispute.  N.B. Industries disagreed.  Regardless of whether judicial notice is appropriate, N.B.

24   Industries did not have prior notice.  Accordingly, this court will not consider the faxes in the reply

25   declaration or any reference to them in the reply brief.

26                    **III.  THE LEGAL STANDARD ON A MOTION TO DISMISS**

27       A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)

28   "tests the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A court

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1   may dismiss a complaint under Rule 12(b)(6) when it does not contain enough facts to state a claim

2   to relief that is plausible on its face.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

3   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

4   draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.*

5   *Iqbal*, 129 S.Ct. 1937, 1949 (2009).  "Factual allegations must be enough to raise a right to relief

6   above the speculative level."  *Twombly,* 550 U.S. at 555 (internal citations and parentheticals

7   omitted).

8       The court takes allegations of material fact as true and construes them in the light most favorable

9   to the plaintiff.  *See id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los*

10  *Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).  In reviewing a motion to dismiss, courts also

11  may consider documents attached to the complaint.  *Parks School of Business, Inc. v. Symington*, 51

12  F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

13      If the court dismisses the complaint, it should grant leave to amend even without a request to

14  amend the pleading "unless it determines that the pleading could not possibly be cured by the

15  allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quotation omitted).

16                                    **IV.  ANALYSIS**

17      The Junk Fax Prevention Act prohibits the sending of an "unsolicited advertisement."  47 U.S.C.

18  § 227(b)(1)(C).  An "unsolicited advertisement" is "any material advertising the commercial

19  availability or quality of any property, goods, or services which is transmitted to any person without

20  that person's express invitation or permission, in writing or otherwise."  47 U.S.C. § 227(a)(5);

21  *accord* 47 C.F.R. § 64.1200(f)(13).

22      Wells Fargo and USPAACC do not deny that USPAACC sent the faxes here on behalf of

23  USPAACC and Wells Fargo (thus subjecting them both to potential liability under the Act) or that

24  the faxes were sent to N.B. Industries without its "express invitation or permission, in writing or

25  otherwise."  *See* 47 U.S.C. § 227(a)(5); Motion to Dismiss, ECF No. 12 at 14:26.  Instead, they

26  argue as a matter of law that the faxes are not advertisements because they announce only the

27  availability and application process for an award, and not "the commercial availability or quality of

28  any property, goods, or services."  *See* 47 U.S.C. § 227(a)(5)*;* ECF No. 12 at 11-12.  N.B. Industries

1  responds that Wells Fargo and USPAACC are advertising in several ways: (a) soliciting award

2  applications promotes the "service" of a $5,000 award, national publicity, and recognition at the

3  USPAACC annual conference; (b) soliciting award applications invites a commercial transaction in

4  that it solicits an applicant to apply for an award in return for allowing Wells Fargo and USPAACC

5  to use the applicant's information for marketing, advertising, and promotional purposes; (c) the

6  faxes promote the commercial availability of the service of USPAACC's annual conference; and (d)

7  the faxes promote Wells Fargo's and USPAACC's products and services by including their logos

8  and website addresses.  Opposition, ECF No. 23 at 15-16.

9      The court concludes as a matter of law that the faxes here announce only the availability of an

10  award, do not advertise "the commercial availability or quality" of Wells Fargo's or USPAACC's

11  "property, goods, or services," and are not rendered "advertisements" merely by the inclusion of

12  logos and website addresses.  *See* 47 U.S.C. § 227(a)(5).  Because this conclusion rests primarily on

13  the plain language of the Act and commentary by the Federal Communications Commission

14  ("FCC") in the document issuing its final rules and regulations on the Act, the analysis (A) begins

15  with a comprehensive summary of the FCC's rules and regulations, (B) applies the statute and the

16  guidance to conclude that the faxes here are not advertisements, and (C) determines that the

17  USPAACC and Wells Fargo logos and commercial information do not alter the conclusion that the

18  faxes are not advertisements.

19  **A.  FCC Final Rules and Regulations Regarding "Advertisements"**

20      The FCC administers the Junk Fax Prevention Act, enacted final regulations implementing the

21  Act, and – in its May 3, 2006 document ("entitled "Rules and Regulations") issuing the final

22  regulations – addressed issues raised during notice-and-comment period following the FCC's notice

23  of its proposed regulations on December 19, 2005.  *See* 47 U.S.C. § 151; 47 C.F.R. § 64.1200 (May

24  3, 2006); *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991;*

25  *Junk Fax Prevention Act of 2005* ("*FCC Rules and Regulations*"), 71 Fed. Reg. 25,967-01 (May 3,

26  2006); *Holmes v. Back Doctors, Ltd.*, No. C 09-540, 2009 WL 3425961, at *4 (S.D. Ill. Oct. 21,

27  2009), *vacated in part on other grounds by Holmes v. Back Doctors, Ltd.*, 695 F. Supp. 2d 843 (S.D.

28  Ill. 2010).  The topics addressed included examples of messages that are not "unsolicited

UNITED STATES DISTRICT COURT
For the Northern District of California

advertisements." *See FCC Rules and Regulations* at *25,972-73.  The examples – though different from the award messages here – illuminate when messages are advertisements and when they are not.

A preliminary issue is whether this court should accord substantial deference under *Chevron* to the FCC's examples of non-advertisements.  *See Chevron v. Natural Res. Defense Council Inc.*, 467 U.S. 837, 843 (1984).  Wells Fargo and USPAACC – citing only *Chevron* – assert that *Chevron* deference is appropriate.  ECF No. 12 at 9.  N.B. Industries does not dispute this conclusion.  Opposition, ECF No. 23 at 11-12 (arguing only that the Act is a remedial statute that should be construed broadly to discourage wrongdoing).

The court is not convinced that the statute is ambiguous on its face.  The plain meaning of "advertisement" in the statute – "any material advertising the commercial availability or quality of any property, goods, or services" – is not difficult to apply.  *See* 47 U.S.C. § 227(a)(5).  That does not mean that the court cannot consider the examples and rely on them.  *Cf. Skidmore v Swift & Co.*, 323 U.S. 134, 140 (1944) (agency interpretations and guidelines, even when not controlling, constitute a body of experience and informed judgment to which courts and litigants may resort for guidance).

If the statute's definition of "unsolicited advertisement" were ambiguous, the court would be inclined to give the *FCC Rules and Regulations* substantial deference under *Chevron*.  Congress delegated to the FCC the authority to elucidate that provision of the statute by regulation, *see* 47 U.S.C. §§ 151, 227(b)(2), and thus a regulation promulgated by the FCC is entitled to controlling weight unless it is arbitrary, capricious, or manifestly contrary to the statute.  *Chevron*, 467 U.S. at 843-44.  The regulation's definition of "unauthorized advertisement" – which was promulgated by the FCC pursuant to its statutory authority – only mirrors the statute and thus does not clarify any ambiguity.  *See* 47 C.F.R. § 64.1200(f)(13).  The examples in the *FCC Rules and Regulations* – issued as a preamble to the final regulations – do provide some guidance as to how to apply the statutory definition.  Again assuming an ambiguity in the statute (and the mirroring regulation), and a delegation by Congress to elucidate that portion of the statute, a court looks to an agency's "subsequent interpretation of those regulations" and accepts them as correct unless they are clearly

erroneous or inconsistent with the statute.  *See Coeur Alaska, Inc. v. Southeast Alaska Conservation Council*, 129 S. Ct. 2458, 2469-70 (2009) (citations omitted).  It makes sense that a court should give the same deference to examples published contemporaneously with the final regulations as a direct response to concerns raised during the notice-and-comment period following the proposed rule.

In any event, the court considers and gives weight to the FCC's examples because they are persuasive and helpful.  The FCC addresses four categories of materials that are not "unsolicited advertisements" regarding the commercial availability or quality of property:  (1) "transactional" communications; (1) "informational" messages; (3) non-commercial messages from non-profit organizations; and (4) non-advertisement messages with incidental or de minimis advertising information.  *FCC Rules and Regulations* at *25,972-73.

### 1. "Transactional" communications

"Transactional" communications are "messages whose purpose is to facilitate, complete, or confirm a commercial transaction that the recipient has previously agreed to enter into with the sender."  According to the FCC, they are not advertisements.  *Id.*  Examples of non-advertisement transactional messages include the following: (a) receipts confirming the purchase of items; (b) information about account balances or changes in terms of service; (c) communications to facilitate a loan transaction (such as appraisals, disclosures, or summaries of closing costs); (d) a price list sent by a wholesaler to a distributer to communicate terms of a transaction; (e) communications from a trade show organizer to an exhibitor if the exhibitor has already agreed to appear; and (f) subscription renewal notices to a current subscriber.  By contrast, communications regarding travel deals, bonus commission offers, and other promotional information are advertisements absent an already-established business relationship.  *Id.*

The FCC explained  that a message is "transactional" (and not an "unsolicited advertisement") if it relates specifically to existing accounts and ongoing transactions.  *Id.* at *25,973.  Thus, messages regarding new or additional business do not qualify as transactional messages, and instead would be advertisements, because they advertise the commercial availability of property, goods, and services.  Examples of messages that are unsolicited advertisements (and not transactional messages) include

UNITED STATES DISTRICT COURT
For the Northern District of California

(a) information about educational opportunities or conferences sent to persons not yet enrolled in the programs and (b) a rate sheet on financial products transmitted to a potential borrower or potential broker (absent a pre-existing business relationship or permission).  *Id.*

The FCC also clarified in this section that a notice soliciting bid proposals on a construction project is not an advertisement so long as it does not otherwise contain offers for products, goods, or services.  *Id.*  Similarly, responses to bid proposals are not advertisements because they facilitate a commercial transaction that the recipient has entered into by soliciting the bids.  *Id.*  This exception apparently does not require a current relationship between project and bidders.  *See id.* (silent on this point, but the conclusion makes sense given that a new construction project is new business).

**2. Informational messages**

Messages that promote goods and services at no cost – including free magazine subscriptions, catalogues, consultations, and seminars – are unsolicited advertisements that require the sender to obtain the recipient's permission in advance (absent a pre-existing business relationship).  *Id.*  The reason, the FCC explains, is that "free" seminars often are a pretext for advertising commercial products and services.  Similarly, "free" publications often are part of a marketing campaign to sell property, goods, and services.  For example, the publication may be free to the fax recipient, but the products promoted in the free publication are commercially available.  *Id.*  Similarly, surveys that serve as a pretext to an advertisement are considered advertisements themselves.  For example, a message that purports to be a survey – but that actually advertises the commercial availability or quality of property, goods, or services – is an advertisement covered by the Act.  *Id.*

By contrast, faxes that truly have only information – such as industry news articles, legislative updates, or employee benefit information – are not messages promoting "the commercial availability or quality of any property, goods, or services" and thus are not advertisements.  *See id.*  For example, a regularly-scheduled newsletter with educational information that varies from issue to issue that is directed at subscribers or members of the sending entity is not an advertisement.  *See, e.g., Holmes,* 2009 WL 3425961, at *2-*4 (back specialist's bona fide educational faxes to personal injury law firm sent on a bi-monthly schedule to regular recipients).

///

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

### 3.  Non-commercial messages from non-profit organizations

In its document issuing the final regulations, the FCC recognized that many non-profits send messages that are not commercial in nature and are therefore not "advertisements" covered by the facsimile advertising prohibition.  *FCC Rules and Regulations* at *25,972.  Messages that are not advertisements include all messages involving political or religious discourse, such as a request for a donation to a political campaign, political action committee, or charitable organizations.  (A political message that includes an invitation to a fundraising dinner does not turn the message into an advertisement because Federal Election Commission rules treat the purchase price of the dinner as a contribution to the campaign or fundraiser.)  *Id.*

### 4.  Non-advertisement communications with company logos and business slogans

In discussing how small amounts of advertising material should not convert a communication into an "unsolicited advertisement," the FCC concluded that a reference to a commercial entity does not by itself make a message a commercial message.  For example, a company logo or a business slogan on an account statement does not convert the statement from a "transactional" communication into an advertisement so long as the primary purpose of the communication is to relay account information to the fax recipient.  *Id.* at *25,973.

Similarly, an "incidental advertisement" in an otherwise "informational" message does not convert the entire communication into an advertisement.  For example, a trade organization's newsletter is not an unsolicited advertisement so long as the newsletter's primary purpose is informational (as opposed to promoting commercial products).  By contrast, a newsletter format used to advertise products or services is still an advertisement.  *Id.*  In determining whether the advertisement is incidental to the informational communication, the FCC considers, among other factors, the following: (a) whether the communication is issued on a regular schedule; (b) whether the text of the communication changes from issue to issue; and (c) whether the communication is directed to specific regular recipients (such as paid subscribers or to recipients who have initiated membership in the organization sending the communication).  *Id.*

In determining whether advertising information is incidental to either a transactional or an informational message, the FCC also considers the following: (a) the amount of space devoted to

**UNITED STATES DISTRICT COURT**
For the Northern District of California

advertising versus the amount of space used for the informational or transactional message; and (b) whether the advertising is on behalf of the sender of the communication, such as an announcement in a membership organization's monthly newsletter about an upcoming conference, or whether the advertising space is sold to and transmitted on behalf of entities other than the sender.  *Id.*

**B.  The Faxes Here Are Not Advertisements**

The faxes here are not advertisements.  First, on their face and under the plain meaning of the definition in the Junk Fax Protection Act, they are applications for an award, not advertisements.  Second, N.B. Industries' argument – that the faxes promote the commercial services of USPAACC's conference and the award itself – is a strained reading of the faxes and is not persuasive.  The court also rejects N.B. Industries' argument that the award application solicits a commercial transaction because it allows Wells Fargo and USPAACC to use an applicant's information.  Third, inclusion of Wells Fargo's and USPAACC's logos and website addresses is incidental information that does not transform the messages into advertisements.

**1.  The faxes here are applications for an award, not advertisements**

When interpreting a statute, a court considers the plain and ordinary meaning of the words in the statute.  *See Hardt v. Reliance Standard Life Ins. Co.*, 130 S. Ct. 2149, 2156 (2010).  Here, the Junk Fax Prevention Act defines "advertisement" as "material advertising the commercial availability or quality of any property, goods, or services."  *See* 47 U.S.C. § 227(a)(5); *accord* 47 C.F.R. § 64.1200(f)(13).  The faxes here do not advertise the commercial availability or quality of any property, goods, or services.  Instead, they are merely applications for an award.

More specifically, page one is a fill-in-the-blank application and the qualifications an applicant must have.  Page two sets forth the six essay questions, how to apply, the award process and rules, and the award's presentation at USPAACC's annual conference.  Page three encourages applicants to apply in part by showing prior award winners, and page four reiterates the basic applicant qualifications.  ECF No. 1 at 36-39.  Applying is voluntary, no fee is required, and the award winner does not need to attend the annual conference to receive the award.  Indeed, while winners are "strongly encouraged to attend," they must do so at their own expense.  *Id.* at 37.  The fax is a notice about the availability of an award and nothing more.

**2. The faxes do not promote the commercial availability of services or a business deal**

The court rejects N.B. Industries' arguments that faxing the award applications (a) promotes the commercial availability of services (the award and the USPAACC conference) and (b) promotes a business transaction (applying for an award in exchange for allowing use of the information for marketing purposes).

a.   The faxes do not promote the commercial availability of services

N.B. Industries first asserts that soliciting award applications promotes the commercial availability of two services: (1) the award of $5,000 and national publicity and recognition; and (2) the USPAACC's annual conference.  ECF No. 23 at 15-16.  These arguments are a strained reading of the fax itself, which is a straight-up application for an award that mentions the conference only as the location for the award.  The application says nothing about the conference's purpose or agenda. (Even if it did, the FCC's guidance suggests an announcement in a membership organization's monthly newsletter about an upcoming conference – as opposed to a paid ad by someone else – is not an advertisement.  *FCC Rules and Regulations* at *25,973.)

The faxed application here at most is an invitation to apply for a benefit (the award) and thus is not an advertisement.  It is similar to a notice soliciting bid proposals for a construction project. That bid proposal is not an advertisement so long as it does not contain offers for products, goods, or services.  *Id.*  Similarly, one court has held that a notice of employment opportunities does not promote the commercial availability of products, services, or goods.  *See Lutz Appellate Servs., Inc. v. Curry*, 859 F. Supp. 180, 181 (E.D. Pa. 1994).  Also, offering a $5,000 award to be presented at a conference (where attendance is optional) is very different than the examples of "opportunities" in the FCC's guidance that really are pretexts for advertisements: (1) offering free seminars that really are a pretext for advertising commercial services; (2) sending informational rate sheets to potential buyers; or (3) sending free publications that are part of a marketing campaign to sell goods.  *See FCC Rules and Regulations* at *25,973.

Another relevant factor that distinguishes this award application from an advertisement is that unlike an advertisement soliciting customers for a product, the award here has selection criteria. Applicants must be active principals in an at-least-51%-Asian-owned business for at least three

1   years.  They also must demonstrate – through six essay questions and letters of reference – how their

2   business performance, philosophy, and contributions to the community qualify them for the award.

3   The award is competitive: an award committee selects only three recipients from the applicants.

4   ECF No. 1 at 36-37.  Unlike the FCC's examples summarized in the last paragraph where messages

5   were pretexts for advertising commercial products or services, the faxes here are applications for a

6   competitively-selected award and are not an open-ended, indiscriminate invitation that is a pretext

7   for advertising.  *See, e.g., Phillips Randolph Ent., LLC v. Adler-Weiner Research Chicago, Inc.*, 526

8   F. Supp. 2d 851, 853 (N.D. Ill. 2007) (finding market-research study on a new health-care program

9   was not an advertisement for products or services, in part because participants must be qualified and

10  pre-screened).

11           b.  <u>The faxes do not propose a commercial transaction</u>

12           N.B. Industries also argues that soliciting applications proposes a commercial transaction

13  involving a quid pro quo: an applicant applies for the award in return for allowing Wells Fargo and

14  USPAACC to use the applicant's information for marketing, advertising, and promotional purposes.

15  This "commercial benefit" to Wells Fargo and USPAACC does not alter the analysis that the faxes

16  are not advertisements.  For example, participants in research studies often are paid for their time

17  and travel or receive honoraria.  *See, e.g., Phillips Randolph*, 526 F. Supp. 2d at 853 ($200 for

18  participating in a market-research study on a new health-care program sponsored by the Chicagoland

19  chamber of commerce); *Ameriguard, Inc. v. University of Kansas*, No. C 06-369, 2006 WL

20  1766812, at *1 (W.D. Mo. June 23, 2006) (time and travel for participation in clinical study on

21  diabetes).  Participants in those studies also gave up their time and, in *Ameriguard*, physically

22  participated in a clinical trial.  The market-research study at issue in *Phillips Randolph* was about a

23  new health-care program, which presumably had commercial relevance.  Similarly, conceivably the

24  diabetes clinical study in *Ameriguard* was relevant to a product or treatment with commercial

25  application.  Nothing could be more business-related than soliciting bids for a construction project

26  or posting notice of employment opportunities.  *See FCC Rules and Regulations* at * 25,973; *Lutz*,

27  859 F. Supp. at 181.

28           The inquiry is not whether there is an ancillary commercial benefit to either party but instead is

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1   whether the message is an advertisement (or a pretext for an advertisement).  Like the examples in

2   the preceding paragraph, the application for an award is not an advertisement because it is not

3   "material advertising the commercial availability or quality of any property, goods, or services."  *See*

4   47 U.S.C. § 227(a)(5).

5         c.  <u>Comparing the faxes to messages that are advertisements shows that these faxes are not</u>

6         Comparing the faxes here with communications that are advertisements bolsters the conclusion

7   that the application for an award is not an advertisement.  For example, a fax promoting the service

8   of "brokering the sale of an insurance agency" is an advertisement, even though it only encouraged

9   the recipient to call about the possibility of selling.  *See Green v. Anthony Clark Int'l Ins. Brokers,*

10   *Ltd.*, 2009 WL 2515594, *3 (N.D. Ill. Aug. 17, 2009).  Plugging a stock and potential profits is an

11   advertisement.  *See Peter Strojnik, P.C. v. Signalife, Inc.,* 2009 WL 605411, *5 (D. Ariz. Mar. 9,

12   2009).  So is a fax promoting a free online marketplace for buying and selling goods for profit.

13   *G.M. Sign, Inc. v. MFG.com, Inc.,* 2009 WL 1137751, at *1 (N.D. Ill. April 24, 2009).  Promoting

14   for-fee-training courses is advertising.  *See Sadowski v. OCO Biomedical Inc.*, No. C 08-3225, 2008

15   WL 5082992, *1-*2 (N.D. Ill. Nov. 25, 2008).  Even free seminars often are a pretext for advertising

16   commercial products and services and thus are unsolicited advertisements under the Act.  *See FCC*

17   *Rules and Regulations* at *25,973.  By contrast, sending an application for an award does not

18   promote the commercial availability of a good or service or serve as a pretext for advertising the

19   commercial availability of a good or service.  It is just an application for an award.

20         **3.  The logos, slogans, and websites do not make the messages into advertisements**

21         The modest logos and business slogans do not convert the faxes here into advertisements.

22         As the FCC's guidance instructs, a reference to a commercial entity in the form of a logo or

23   business slogan does not by itself make a message an "advertisement."  *FCC Rules and Regulations*

24   at *25,973.  Similarly, an incidental advertisement does not convert a message that is not an

25   advertisement into an advertisement.  In determining whether advertising information is incidental,

26   relevant factors include the amount of the space for the so-called advertising.  *Id.*

27         In the faxes at issue here, page one has penny-sized logos for Wells Fargo and USPAACC-EF,

28   and Wells Fargo's business slogan ("together we'll go far" and the stage coach).  Each company's

1    logo appears once more: Wells Fargo on page three (including its slogan) and USPAACC on page

2    four.  Questions are directed to USPAACC at an 800 number or to Wells Fargo's Asian Business

3    Services at abs@wellsfargo.com.  On the last page is "visit uspaacc.com or

4    wellsfargo.com/biz/asian."  ECF No. 1 at 36-39.

5        The so-called advertising content here appears because it identifies the award's sponsors.  It is

6    modest in the space it uses, and – besides the references to Wells Fargo's Asian Business Services –

7    suggests nothing about the commercial availability or quality of any of Wells Fargo's or

8    USPAACC's property, goods, or services.  *See* 47 U.S.C. § 227(a)(5).  The application otherwise

9    contains information about the award criteria and process and the application itself.  If the logos and

10   similar information are advertising content, then they are entirely incidental, and they do not convert

11   the faxed applications into advertisements.

12       The listing of USPAACC's and Wells Fargo's websites does not alter this conclusion.   N.B.

13   Industries' argument is that Wells Fargo's website is interactive and that USPAACC and Wells

14   Fargo both have websites that promote their services.  Opposition, ECF No. 23 at 25-26.  But mere

15   inclusion of a website on a fax does not make it an advertisement.  Under the FCC's guidance, the

16   inquiry is still whether the inclusion of the information is incidental.  It is here.  From the face of the

17   faxes, they are applications for an award and nothing more.

18   **4. Conclusion: an application for an award is not an advertisement**

19       In sum, the application for the USPAACC-Wells Fargo Asian Business Leadership Award is not

20   only different than these overt advertisements, but also, it is entirely distinguishable from "free"

21   seminars that really are pretexts for advertising.  As an application for a benefit, it is similar to a

22   solicitation for bid proposals for a construction project, or a notice of employment opportunities, or

23   the invitations to participate in the research study or clinical trial in *Phillips Randolph* and

24   *Ameriguard.   See FCC Rules and Regulations* at * 25,973; *Lutz,* 859 F. Supp. at 181; *Phillips

25   Randolph*, 526 F. Supp. 2d at 853; *Ameriguard,* 2006 WL 1766812 at *1.  The award also is based

26   on selective criteria, a factor found persuasive by the *Phillips Randolph* court.  *See* 526 F. Supp. 2d

27   at 853.  Finally, it is an award sponsored in part by a nonprofit Asian American chamber of

28   commerce to leading Asian-owned businesses.  As the FCC's guidance recognizes, many nonprofits

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

ORDER (C 10-03203 LB)

send messages that are not commercial in nature and thus are not advertisements. *FCC Rules and Regulations* at *25,972. That is the case here. The faxes are just applications for an award, not advertisements. The logos and websites are incidental and do not convert the applications into advertisements.

## V. CONCLUSION

The court concludes as a matter of law that the faxes are not unsolicited advertisements under the Junk Fax Prevention Act and **GRANTS** Wells Fargo's and USPAACC's motion to dismiss filed at ECF No. 12. Because the complaint cannot be cured by allegations of additional facts, the court **DISMISSES THE COMPLAINT WITH PREJUDICE.** *See, e.g., Holmes*, 2009 WL 3425961 at *2 (also addressing as a matter of law whether or not faxes are unsolicited advertisements); *Ameriguard*, 2006 WL 1766812 at *1 (same).

The case management conference set for December 2, 2010, at 1:30 p.m. is **VACATED.** The court also does not address the parties' proposed stipulated protective order filed at ECF No. 34 because it is moot.

**IT IS SO ORDERED.**

Dated: November 30, 2010

_____
LAUREL BEELER
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
For the Northern District of California